UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID LEVARGE, :
as next friend on behalf of T.L. :
    Plaintiff :
 :
v. : Case No. 3:05 CV 262 (CFD)
 :
PRESTON BOARD OF EDUCATION, :
JANET ROBINSON, ANNA SOBANSKI, :
    Defendants. :

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The plaintiff, David LeVarge, brings this action on behalf of his son, T.L., a former student at the Poquetanuck School[1] in the Preston School District. LeVarge alleges that the defendants, the Preston Board of Education, Superintendent of Schools Janet Robinson, and Principal Anna Sobanski discriminated against T.L. on the basis of gender in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, et seq., and brings a claim for denial of due process and equal protection under 42 U.S.C. § 1983. LeVarge also alleges state law claims of negligent and intentional infliction of emotional distress and failure to protect T.L. from bullying. The defendants move for summary judgment.

I.    Background

On March 4, 2004, T.L., then nine years old, said to another boy at his school lunch table

---

[1] The parties seem to disagree about whether the name of the school T.L. attended is "Poquetanuck" or "Preston Veterans' Memorial School."

-1-

"Do you love me? I love you."[2] According to Principal Sobanski, she learned that T.L. said this repeatedly and refused to stop at the other child's request. In response, the child threw food at T.L. According to Sobanski, T.L. reported the food-throwing to adults who moved the child to another table. Sobanski maintains that T.L began laughing and boasting that he had gotten the other child in trouble. According to Sobanski, the other child responded by calling T.L. "gay" and encouraging another student to do the same. According to Sobanski, both of these children went to her office and were punished by being "sent to the fence" during recess.

After she learned of the incident, Sobanski spoke with all of the children involved. T.L. reported two versions of the incident during his meeting with Sobanski. According to Sobanski, T.L. initially reported that he had been talking to himself and had not directed his words to the other child. Sobanski maintains that T.L.'s first account "would have put blame on the other children for something that was not true." According to Sobanski, she instructed T.L. to write a note to his parents explaining that he had not been forthright with her. T.L. wrote the following note:

> Dear Mom and Dad,
> Today I said on perpis [sic] I said "Do you love me Connor." And it was very bad and I hope that you will forgive me. And you can punish me if you want to.
> from
> [T.L.]

Sobanski added the following note:

> [T.L.]'s verbal actions caused others to tease him. He then laughed for getting someone into trouble and did not tell me the truth the first time - he tried to blame the other child.

---

[2] The LeVarges admit only that T.L. said "Do you love me?"

Sobanski denies that she had any conversation with T.L. about homosexuality,[3] or that T.L was asked to write the note for any reason other than to explain that he was not immediately forthright.

After this incident, LeVarge kept T.L. home from school until March 22. When he returned to school, Jeff Thimms, the school psychologist, checked on T.L., but provided no counseling. According to Sobanski, T.L. never sought out Thimms for counseling.

LeVarge also objects to a claimed Preston School policy concerning adult supervision of the school restrooms. LeVarge claims that boys and girls are escorted to the restrooms differently: that female teachers enter the boys' rooms with the students, but male teachers do not enter the girls' rooms. According to Sobanski however, all students are accompanied to the restroom by both male and female faculty. Faculty members wait outside of the restroom for

---

[3] The plaintiff submitted two unsigned letters apparently written by Tara and David LeVarge to the defendants. One of these states that Sobanski "admonish[ed T.L.] against the evils of homosexuality and how inappropriate it was to ask another boy if he loved him."
    The evidence proffered by a party in opposition to a motion for summary judgment must be admissible at trial. See, e.g., Caputo v. Pfizer, Inc., 267 F.3d 181, 188 (2d Cir. 2001) (stating that summary judgment is appropriate only if admissible evidence establishes that there is no genuine issue of material fact).
    The unsigned letters submitted by the LeVarges are hearsay and do not constitute admissible evidence of the matters contained therein for the purposes of summary judgment or trial. See Fed. R. Evidence 802; see also Fed. R. Civ. P. 56(e) (requiring papers submitted in opposition to a motion for summary judgment to be sworn or certified); Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir.1985) (a party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial"). Even if the letters had been submitted in the form of, or as attachments to, affidavits they would likewise be largely inadmissible. It is not apparent that much of the letters are based on personal knowledge, and they do not show affirmatively that the LeVarges would be competent to testify on the matters stated therein. Fed. R. Civ. P. 56(e); H. Sand & Co. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir. 1991) ("hearsay testimony . . . that would not be admissible if testified to at . . . trial may not properly be set forth in [a Rule 56] affidavit." (internal quotation marks omitted)).

students, but knock and open the door if needed to address students who are "playing around."[4]

The complaint also contains allegations concerning an incident in November 2003. According to the complaint, T.L. was suspended after three female classmates complained that he had sexually molested them. The complaint further alleges that in April 2004 the female students admitted that they had lied because they "wanted to get T.L. in trouble." Neither party has submitted any evidence concerning this incident.[5]

II.     Standard of Review

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 5(c)); accord Miner v. Glen

---

[4] The unsigned letters submitted by the plaintiff say that "little boys were escorted into the toilet by adult women," and that according to Sobanski "there is a fundamental difference in the two genders in regard to policy and privacy." The letters also say that "Ms. Sobanski assured us that she would never allow a man to escort a female student into the bathroom."

[5] The unsigned letters submitted by the plaintiffs contain a description of the November 2003 suspension. According to these letters, Sobanski called the LeVarges in November 2003 to inform them that "three parents had formally complained to her that [T.L.] had intentionally touched their daughters' breasts while on the playground. She assured us that she had thoroughly investigated the allegations and found them to be true." According to the letters, the LeVarges also believed the accusations. However, in April 2004, they "learned that these girls had made up the story in an effort to get our son in trouble."

Falls, 999 F.2d 655, 661 (2d Cir. 1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the nonmovant's claim. Celotex, 477 U.S. at 323-25; Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1998). Once the movant has established a prima facie case demonstrating the lack of a genuine issue of material fact, the nonmoving party must provide enough evidence to support a jury verdict in its favor. Anderson, 477 U.S. at 248; Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). A plaintiff may not rely on conclusory statements or mere contentions that the evidence in support of summary judgment is not credible. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). Similarly, a plaintiff, as the nonmovant, may not rest "upon the mere allegations or denials" in its complaint to demonstrate the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(e). Therefore, after discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex, 477 U.S. at 323. When addressing a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d at 982.

III. Discussion

    A. Discrimination

LeVarge argues that the November 2003 and March 2004 incidents, and the policy concerning supervision of the restrooms created a sexually hostile educational environment in violation of Title IX.[6] LeVarge also argues that he was treated differently as a result of his gender and perceived sexual-orientation in violation of the Equal Protection clause of the Fourteenth Amendment.[7]

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "'Discrimination' for purposes of Title IX liability, is not limited to disparate provision of programs, aid, benefits or services or inequitable application of rules or sanctions. It has, instead, been recognized as also encompassing teacher-on-student [and student-on-student] hostile educational environment sexual harassment." Hayut v. State University of New York, 352 F.3d 733, 750 (2d. Cir. 2003) (internal citation omitted); see also Franklin, 503 U.S. at 75, 112 S.Ct. 1028 (holding that teacher's sexual harassment of student constitutes "discrimination" on the

---

[6] The Court notes that LeVarge has also failed to present sufficient evidence to sustain a gender discrimination case based on disparate treatment. LeVarge has not presented evidence suggesting that T.L was subjected to discipline or offered services differently on account of his gender. LeVarge also has failed to present evidence suggesting that the restroom supervision policy was implemented differently for male and female students.

[7] LeVarge did not brief his Equal Protection claim in opposition to the motion for summary judgment. Based on LeVarge's previous brief in opposition to the defendant's motion for judgment on the pleadings, it appears that LeVarge claims discrimination based on perceived sexual-orientation, and/or gender-based discrimination, and not "class of one" discrimination, as the defendants assume.

basis of sex).

Hostile educational environment claims, whether brought under Title IX or § 1983, are governed by traditional Title VII "hostile environment" jurisprudence.[8] Hayut v. State University of New York, 352 F.3d 733, 744 -745 (2d Cir. 2003); see also Lovell v. Comsewogue School Dist., 214 F. Supp.2d 319, 323 (E.D.N.Y. 2002) (holding that harassment based on sexual orientation is a basis for an equal protection claim under Section 1983). As a result, surviving summary judgment on a hostile educational environment claim "requires evidence not only that the victim subjectively perceived the environment to be hostile or abusive, but also that the environment was objectively hostile and abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions" of the victim's educational environment. Hayut v. State University of New York, 352 F.3d at 744 -745 (internal quotation marks and alterations omitted); see also Davis ex. rel. LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 631, 119 S.Ct. 1661, 1665 (1999) (a plaintiff "must show harassment that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victims are effectively denied equal access to an institution's resources and opportunities").

"In the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. Damages are not

---

[8] A "§ 1983 claim [against a school district] based on the Equal Protection Clause is subsumed by Title IX." Bruneau ex rel. Schofield v. South Kortright Cent. School Dist., 163 F.3d 749, 758 (2d Cir. 1998) cert. denied 526 U.S. 1145, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999). However, Title IX does not provide a private right of action against individual school employees, and thus does not subsume an Equal Protection claim against Sobanski and Robinson.

available for simple acts of teasing and name-calling among students, even where these comments target differences in gender. Damages are available only where the harassment constitutes such severe gender-based mistreatment that it denies a victim the equal access to education that Title IX is designed to protect." Doe ex rel. A.N. v. East Haven Bd. of Educ., 430 F. Supp.2d 54, 59 (D. Conn. 2006) aff'd 200 Fed. Appx. 46.

For a school district to be liable for student-on-student harassment under Title IX, a plaintiff must also show that the district was deliberately indifferent to known acts of harassment by other students, the school district had substantial control over the alleged harasser and the context in which the harassment occurred, and that the district's response to the harassment was clearly unreasonable in light of the known circumstances. Davis v. Monroe County Bd. of Educ., 526 U.S. at 645; Doe v. East Haven Bd. of Educ., 430 F. Supp.2d at 63 ("defendant must respond to acts of known peer harassment in a manner that is not clearly unreasonable").

### 1. March 2004 Incident

It appears that LeVarge claims that the March 2004 incident could support a claim of harassment based on (1) the school's failure to protect T.L. from teasing by other students, or (2) Sobanski's response to the incident.

#### a. Student-on-Student Harassment

During the March 2004 incident, T.L. was subjected to thrown food and homophobic teasing in the school cafeteria after his statement to the other male student. The only evidence presented concerning the incident indicates that school officials responded by separating T.L. from the other students and requiring those students to forfeit their recess period. Sobanski, the

school principal, investigated the incident immediately after learning of it. Construing the evidence in the light most favorable to the plaintiff,[9] no reasonable jury could conclude that the other students' conduct was so severe, pervasive, and objectively offensive that T.L. was effectively denied equal access to the school.[10] Further, no reasonable jury could conclude that the school officials – who acted to protect T.L. by separating him from the other students, and disciplining those students – were clearly objectively unreasonable in their response to the incident or in requiring T.L. to write a note to his parents, failing to call T.L.'s parents, and failing to refer T.L. for counseling.

        b.      <u>Harassment by Sobanski</u>

LeVarge has failed to present evidence that Sobanski required T.L to write the March 2004 note to his parents because of his gender or perceived sexual orientation. Even assuming that Sobanski required LeVarge to write the note because he told another boy that he loved him – and not because T.L. failed to provide a forthright account of the incident as Sobanski claims – LeVarge has failed to present evidence suggesting that a female student would have been treated differently, or that LeVarge would have been treated differently if he had addressed himself to a female classmate in a similar manner. Similarly, LeVarge has failed to present evidence supporting an inference that the remainder of Sobanski's response to the incident – in particular, her failure to request the intervention of the school psychologist or nurse, to call T.L's parents to inform them of the incident, or to otherwise offer T.L. comfort or counseling – was the result of

---

[9] Assuming for the purposes of summary judgment that the other students' conduct constituted gender-based harassment.

[10] Under the circumstances, T.L.'s parents' decision to keep him out of school is not evidence that T.L was denied equal access to the school.

gender discrimination.

2. Restroom Policy

A gender-based classification will violate the equal protection clause of the Fourteenth Amendment unless it can be "established at least that the challenged classification serves important governmental objectives and . . . the discriminatory means employed are substantially related to the achievement of those objectives." See, e.g., Tuan Anh Nguyen v. I.N.S., 533 U.S. 53, 60-61, 121 S.Ct. 2053, 2059, 150 L.Ed.2d 115 (2001) (internal quotation marks and alteration ommitted).

LeVarge has failed to present any admissible evidence that the girls' restrooms were supervised differently than the boys' restrooms, i.e. that there was a gender-based classification.

3. November 2003 Incident

The complaint alleges that T.L. was wrongfully suspended from school after being falsely accused of molesting three female classmates. According to the complaint, the girls' accusations were never properly investigated. As noted above, neither party has presented evidence concerning this incident.[11] Unsigned letters, apparently from T.L.'s parents to the school, do not constitute evidence of the circumstances described by the letters for the purposes of summary judgment or trial.[12]

---

[11] The defendants admit in their answer that "contact was made with plaintiff's parents regarding an alleged incident at school."

[12] However, even if the plaintiff had submitted the contents of the letters in the form of affidavits, they would fail to raise a genuine issue of material fact concerning the November 2003

B.   Due Process

The complaint alleges that Sobanski denied T.L. due process by suspending him in November 2003 without giving him an opportunity to be heard concerning the incident. As discussed above, neither party has presented evidence related to these allegations. Further, LeVarge did not discuss his due process claims in his memorandum in opposition to the motion for summary judgment. Accordingly, summary judgment is granted as to the due process claims.

C.   State Claims

As a result of the Court's rulings on LeVarge's discrimination and due process claims, he is left with two state-law claims. While it is true that the Court may exercise supplemental jurisdiction over LeVarge's state-law claims under 28 U.S.C. § 1367, the Second Circuit has advised district courts that "'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988). This is the "usual case" envisioned in Valencia. All that remains in this case are two state law claims. Therefore, in the interests of judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Counts Three and Four.

---

incident. Notably, the letters do not describe circumstances suggesting that the incident was investigated poorly, or that T.L. was punished differently because of his gender.

IV.	Conclusion

The motion for summary judgment [Doc. # 52] is GRANTED, and judgment is entered for the defendants. The clerk is ordered to close this case.

SO ORDERED this   11th   day of March 2008, at Hartford, Connecticut.

        /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**